UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEOFFREY N. FIEGER, NANCY
FISHER, and FIEGER, FIEGER, KENNEY
& JOHNSON, P.C.,

    Plaintiffs,

vs.

CASE NO. 07-CV-10533-DT
HON. LAWRENCE P. ZATKOFF

ALBERTO R. GONZALES, UNITED
STATES ATTORNEY GENERAL, and
MICHAEL E. TONER, FEDERAL
ELECTION COMMISSION CHAIRMAN,
in their official capacities,

    Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron, State of
Michigan, on the 15th day of August, 2007.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on several motions:

    A.    Plaintiffs' Motion for Declaratory Judgment (Docket #4);

    B.    Defendant Alberto Gonzales, United States Attorney General's ("Attorney

        General") Motion to Dismiss (Docket #15);

    C.    Defendant Michael E. Toner, Federal Election Commission Chairman's

("Commission") Motion for Summary Judgment (Docket #19); and

D. Plaintiffs' Motion for Limited Discovery (Docket #12).

The parties have filed their respective responses and, to the extent they desired to do so in a timely manner, their respective replies. The Court finds that the facts and legal arguments pertinent to the motions are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without this Court entertaining oral arguments.

For the reasons that follow, Plaintiffs' Motion for Declaratory Judgment is DENIED, the Attorney General's Motion to Dismiss is GRANTED, the Commission's Motion for Summary Judgment is GRANTED, Plaintiffs' Motion for Limited Discovery is DENIED as MOOT, and Plaintiffs' cause of action is DISMISSED WITH PREJUDICE.

## II. BACKGROUND

**A. Plaintiffs' Cause of Action**

On February 5, 2007, attorney Geoffrey Fieger ("Fieger"), Fieger, Fieger, Kenney & Johnson, P.C. (the firm of which Fieger is the president) ("the Law Firm"), and Nancy Fisher, the Law Firm's office manager ("Fisher"), filed an Application for Writ of Mandamus and Complaint ("Complaint"). Plaintiffs allege that they are the targets of an ongoing grand jury investigation, and that the Commission "is tacitly cooperating and conspiring with the Attorney General and its subordinate offices to circumvent the jurisdictional requirements" of the Federal Election Campaign Act, 2 U.S.C. §§ 431-55, as amended. According to Plaintiffs, the grand jury investigation is illegal because the Act provides the Commission with the exclusive authority to perform any type of

investigation, in the first instance, and that the Department of Justice ("DOJ"), through the Attorney General, is precluded from proceeding unless and until it receives a referral from the Commission. Plaintiffs allege that because there has been no such referral by the Commission to DOJ in this matter, the ongoing grand jury investigation of their activities is illegal. Plaintiffs seek mandamus relief against the Commission and a declaratory judgment against both the Commission and the Attorney General.

**B.     The Commission**

Congress created and empowered the Commission to administer, interpret and enforce three federal statutes: (1) Federal Election Campaign Act, 2 U.S.C. §§ 431-55, as amended ("the Act"), (2) the Presidential Election Campaign Fund Act, 26 U.S.C. §§ 9001-9013, and (3) the Presidential Primary Matching Payment Account Act, 26 U.S.C. §§ 9031-9042. *See generally* 2 U.S.C.§§ 437c(b)(1), 437d(a) and 437g. In this case, the only one of those three statutes at issue is the Act.

**C.     The Act**

The Act imposes extensive requirements for comprehensive public disclosure of all contributions and expenditures in connection with federal election campaigns. 2 U.S.C. §§ 432-434. The Act places dollar limitations on contributions by individuals and multi-candidate political committees to candidates for federal office, 2 U.S.C. § 441a(a), and prohibits campaign contributions by corporations and unions from their treasury funds. 2 U.S.C. § 441b(a). The Act also prohibits contributions made in the name of another person. 2 U.S.C. § 441f. Contributing money to a candidate in one's own name but using funds provided by someone else is an example of activity that would violate the Act. *See* 2 U.S.C. § 441f; 11 C.F.R. § 110.4(b)(2)(I).

**D.     The Parties' Positions Regarding the Act**

The parties agree that (1) the Commission is responsible for civil enforcement of the Act, and (2) the Attorney General is responsible for the criminal enforcement of the Act. As Plaintiffs note, however, the parties do not agree on the timing of when the Attorney General may exercise jurisdiction to enforce the criminal provisions of the Act. Simply put, Plaintiffs believe the Commission is the sole body with jurisdiction to enforce the Act until such time as the Commission makes a referral to the Attorney General. Plaintiffs' argument is based on the premise that the Act provides that the Commission has exclusive jurisdiction until the time of a referral and that such exclusive jurisdiction applies to both civil and criminal enforcement. The Defendants believe that the Act grants the Commission exclusive jurisdiction only for purposes of enforcement of the civil provisions of the Act. The Defendants contend that the Attorney General may initiate a criminal investigation and/or prosecution at any time, whether there has been a referral from the Commission pursuant to the terms of the Act or for any other reason. For the reasons that follow, the Court concludes that the Plaintiffs have misinterpreted the Act.

### III. APPLICABLE LAW

**A.      Standard of Review under Fed.R.Civ.P. 12(b)(6)**

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of the plaintiff's complaint. The Court must accept as true all factual allegations in the complaint, and any ambiguities must be resolved in the plaintiff's favor. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 577 (6th Cir. 1992). A district court's grant of a motion to dismiss is proper when there is no set of facts that would allow the plaintiff to recover. *Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

**B.	Standard of Review under Fed.R.Civ.P. 56**

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  ANALYSIS OF PLAINTIFFS' CLAIM UNDER THE ACT

Plaintiffs' request for declaratory relief is premised upon their belief that the Act precludes the grand jury and the Attorney General from investigating possible criminal violations of federal campaign finance law unless and until the Commission finds probable cause to believe that a knowing and willful violation of the Act has occurred and refers the matter to the Attorney General pursuant to 2 U.S.C. § 437g(a)(5)(C).

**A.	The Act**

In 1971, Congress enacted the Act to "limit spending in federal election campaigns and to eliminate the actual or perceived pernicious influence over candidates for elective office that wealthy individuals or corporations could achieve by financing the 'political warchests' of those candidates." *Orloski v. Federal Election Com'n*, 795 F.2d 156, 163 (C.A.D.C. 1986). The Act provides, in relevant part, that "[t]he Commission shall have exclusive jurisdiction with respect to the **civil** enforcement of such provisions." 2 U.S.C. § 437c(b)(1) (emphasis added). Such jurisdiction is not unlimited, however, as the Act contains provisions which restrict the Commission in its enforcement and investigation of the Act. If the Commission finds reason to believe that there has been a violation of the Act, the Act provides that the Commission "shall make an investigation of [the] alleged violation, which may include a field investigation or audit, in accordance with the provisions of [section 437g(a)]." 2 U.S.C. § 437g(a)(2). The Act permits the Commission to issue subpoenas and orders in aid of its investigation and provides the Commission with the power to seek judicial enforcement of such orders in federal district court. 2 U.S.C. §§ 437d(a)(3) and (4); 2 U.S.C. § 437d(b).

At the conclusion of an administrative investigation, the statute authorizes the Commission's General Counsel to recommend that the Commission vote on whether there is probable cause to

believe that the Act has been violated. 2 U.S.C. § 437g(a)(3). If the General Counsel recommends that the Commission find probable cause to believe a party has violated the Act, the statute requires the General Counsel to notify that party, provide such party with a brief stating the General Counsel's position on the issues, and give that party the opportunity to submit a response brief. *Id.* The General Counsel then prepares a report to the Commission, recommending what action the Commission should take. 11 C.F.R. § 111.16. Upon consideration of the brief(s) and the General Counsel's report, the Commission determines whether there is "probable cause to believe" a violation has occurred. 2 U.S.C. § 437g(a)(4)(A)(i).

If the Commission finds probable cause to believe a violation of the Act has occurred but that the violation is not knowing and willful, the Commission attempts to resolve the matter by "informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement" with the respondent. The Act requires any such conciliation effort to continue for at least 30 days - or 15 days if the probable cause finding was made within 45 days of an election - and authorizes the Commission to continue such negotiations for up to 90 days. 2 U.S.C. § 437g(a)(4)(A)(i). If the Commission is unable to negotiate an acceptable conciliation agreement, the Act permits the Commission to file a **civil** law enforcement suit in federal district court. The Commission's decision whether to file a **civil** enforcement suit is discretionary. *See* 2 U.S.C. § 437g(a)(6)(A).

On the other hand, upon the affirmative vote of four Commission members that there is probable cause to believe that there has been or is about to be a knowing and willful violation of (1) this Act subject to 2 U.S.C. § 437g(d), or (2) chapter 95 or chapter 96 of title 26, the Commission may refer such apparent violation to the Attorney General (without engaging in the conciliation discussions described above). 2 U.S.C. § 437g(a)(5)(C).

**B.     Authority of the Attorney General**

28 U.S.C. § 516 provides, in relevant part: "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." The Supreme Court has interpreted this to mean that, "Congress has given very broad authority to the Attorney General to institute and conduct litigation in order to establish and safeguard government." *United States v. California*, 332 U.S. 19, 26-27 n.3 (1947). While Congress has the authority to restrict this broad authority, it has long been settled that the statutory authority of the Attorney General to control litigation is not diminished without a "clear and unambiguous" directive from Congress. *See, e.g., United States v. Morgan*, 222 U.S. 274, 282 (1911).

**C.     Plain Language of Statute**

*1.     Exclusive Jurisdiction of the Commission for Civil Enforcement Only*

As noted above, the Act specifically provides that the Commission has "exclusive jurisdiction with respect to the **civil** enforcement of such provisions." 2 U.S.C. § 437c(b)(1) (emphasis added). The Act does not state currently, nor has it ever provided, that the Commission has exclusive jurisdiction with respect to **criminal** enforcement of the Act's provisions.

Plaintiffs consistently ignore that the Act states that the Commission has exclusive jurisdiction over "**civil** enforcement," always dropping the word "civil" in presenting their arguments. For example, Plaintiffs argue that

> The congressional mandate contained in the statute is that the Commission has *exclusive* jurisdiction (which means to the exclusion of all others, including the Attorney General), and the Act provides the mechanism by which the Commission may refer matters to the

8

> Attorney General only *after* it has exercised its exclusive jurisdiction
> . . .

(emphasis in original). If Plaintiffs tracked the language of the statute in presenting their arguments, their arguments would be without merit on their face.[1] Whether Plaintiffs' failure to recognize Congress's use of the word "civil" is borne out of deliberate intent (as appears to be the case), indifference or ignorance, such failure renders Plaintiffs' arguments of statutory interpretation legally deficient.

2. *Attorney General's Authority*

The Supreme Court's decision in *Morgan* also demonstrates the inadequacy of Plaintiffs' arguments regarding its declaratory judgment claim presently before the Court. *See Morgan*, 222 U.S. at 282 (absent a "clear and unambiguous" directive from Congress, the Attorney General has plenary authority to conduct litigation on behalf of the federal government); 28 U.S.C. § 516; 2 U.S.C. §§ 437c, 437g. In this case, there is a clear and unambiguous directive from Congress. That directive applies only to civil enforcement of the Act, however, and not criminal enforcement of the Act, as reflected by the language in Section 437c(b)(1): "[t]he Commission shall

---

[1] If the language from Plaintiffs' brief quoted above is conformed to the wording of the statute (by adding the word "civil" as the statute provides), it is clear how feeble Plaintiffs' arguments would be. In order to comport with the statue, the quoted language above should read:

> The congressional mandate contained in the statute is that the Commission has *exclusive **civil** *jurisdiction (which means to the exclusion of all others, including the Attorney General), and the Act provides the mechanism by which the Commission may refer matters to the Attorney General only *after* it has exercised its exclusive ***civil*** jurisdiction . . .

9

have exclusive jurisdiction with respect to the civil enforcement" of the Act.[2]

On the other hand, there is no language in the Act that evidences a "clear and unambiguous" intent of Congress to grant the Commission exclusive jurisdiction (at any time) to enforce criminal violations of the Act. The Court also finds that there is no other language in the Act which could constitute a prohibition or restriction on the authority of the Attorney General to investigate or charge a criminal violation of federal election law. Section 437g(a)(5)(c), the only relevant provision of the Act that mentions the Attorney General, provides:

> If the Commission by an affirmative vote of 4 of its members, determines that there is probable cause to believe that a knowing and willful violation of this Act which is subject to subsection (d) of this section, or a knowing and willful violation of chapter 95 or chapter 96 of title 26, has occurred or is about to occur, it may refer such apparent violation to the Attorney General of the United States without regard to any limitations set forth on paragraph (4)(A).

This provision only addresses the Commission's authority; however, nothing in that (or any other) provision of the Act addresses, much less restricts, the authority of the Attorney General (or a grand jury) to investigate activities that might constitute criminal violations of the Act.

   *3.   Conclusion*

For the reasons set forth above, the Court concludes that the plain language of the Act neither (a) grants the Commission exclusive jurisdiction to enforce criminal violations of the Act (at any time), nor (b) infringes on the Attorney General's plenary power to enforce criminal violations of the Act.

**D.   Legislative History**

---

[2]Although 2 U.S.C. § 437g requires that the Commission exercise its civil enforcement jurisdiction through a series of administrative steps, none of those requirements mentions the Attorney General, let alone the timing of when the Attorney General may engage in criminal enforcement actions.

The legislative history of the Act also demonstrates that Congress did not intend to limit the then-existing authority of the Attorney General to investigate possible criminal violations of the Act without a referral from the Commission. *See generally,* Legislative History of Federal Election Campaign Act Amendments of 1976 ("1976 Legislative History"). Legislation in 1976 specifically provided the Commission with exclusive civil authority. The same legislation expressly exempted from the Commission's authority, however, "complaints directed to the Attorney General and seeking the institution of a criminal proceeding." H.R. Rep. No. 94-917 at 4 (1976), 94th Cong., 2d Sess., reprinted in 1976 Legislative History, at 804. The 1976 committee report that accompanied the House bill that giving the Commission exclusive civil enforcement authority explicitly stated an intent not to limit the traditional criminal authority of the Attorney General.[3] H.R. 12406, which followed the pattern set in the 1974 Amendments, provides that all complaints that a person is entitled to relief because of conduct regulated by this Act would be handled by the Commission, but those complaints seeking the institution of a criminal proceeding would continue to be directed to the Attorney General. 1976 Legislative History, at 804.

The only comment that arguably supports Plaintiffs' interpretation of the Act is a single paragraph in a 1976 floor statement by Senator Brock. Senator Brock, an opponent of the 1976 Amendments, condemned them as "a deceit, a sham, and a fraud on the American public." 94 Cong. Rec. S6479 (daily ed., May 4, 1976) (statement of Sen. Brock); 1976 Legislative History at 1109. Such statement is of little weight, however, as the Supreme Court has:

> often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents. In their zeal to

---

[3]Committee reports are especially relevant sources of legislative intent. *See, e.g., Schmitt v. City of Detroit*, 395 F.3d 327, 331 n.2 (6th Cir. 2005).

11

> defeat a bill, they understandably tend to overstate its reach. The fears and doubts of the opposition are no authoritative guide to the construction of legislation. It is the sponsors that we look to when the meaning of the statutory words is in doubt.

*NLRB v. Fruit Vegetable Packers Warehouseman*, 377 U.S. 58, 66 (1964) (quotation and citations omitted). Senator Cannon, a sponsor of S. 3065, stated:

> Under existing law, every violation of the Federal election campaign laws is a criminal act and the Federal Election Commission has extremely limited civil enforcement powers at the present time. S. 3065 would provide criminal penalties for willful and knowing violations of the law of a substantive nature, and civil penalties and immediate disclosure of violations for less substantial infractions of the campaign finance laws. S. 3065 would give the Commission expanded civil enforcement powers including the power to ask the court for imposition of civil fines for such violations as, for example, the negligent failure to file a particular report, as well as more substantial civil fines for willful and knowing violations of the act. ***The bill would grant the exclusive civil enforcement of the act to the Commission to avoid confusion and overlapping with the Department of Justice, but at the same time, retain the jurisdiction of the Department of Justice for the criminal prosecution of any violations of this act.***

94 Cong. Rec. S3860-61 (daily ed. March 22, 1976) (statement of Sen. Cannon); 1976 Legislative History, at 470-71 (emphasis added). *See also* 94 Cong. Rec. H3778 (daily ed. May 3, 1976) (remarks of House Committee Chairman Hayes that the bill "centralize[s] the authority to deal with complaints alleging on any theory that a person is entitled to relief because of conduct regulated by this act, other than complaints directed to the Attorney General and seeking the institution of a criminal proceeding"); 1976 Legislative History, at 1078.

For the foregoing reasons, the Court finds that the legislative history demonstrates that Congress never intended to limit or displace the Attorney General's independent authority to pursue criminal violations of the Act.

**E. Prior Cases**

The Court also observes that numerous courts over the last 30 years have concluded that criminal enforcement may either originate with the Attorney General or stem from a referral by the Commission to the Attorney General. *See, e.g., United States v. International Operating Engineers, Local 701*, 638 F.2d 1161, 1168 (9th Cir. 1979); *Bialek v. Gonzales*, Case No. 07-cv-00321, June 28, 2007 (D.Col.); *United States v. Jackson*, 433 F. Supp. 239, 241 (W.D.N.Y. 1977); *United States v. Tonry*, 433 F. Supp. 620, 623 (E.D. La. 1977); *United States v. Galliano*, 836 F.2d 1362, 1368 n.6 (D.C. Cir. 1988). *See also United States v. Hsia*, 24 F. Supp. 2d 33, 43 (D.D.C. 1998), *rev'd on other grounds*, 176 F.3d 517 (D.C. Cir. 1999). At least one commentator has reached this same conclusion. *See Elections and Elective Franchise*, 10A Fed.Proc., L.Ed. §28:352 (1994) ("exhaustion of administrative remedies by the Attorney General under 2 U.S.C. 437g is not a prerequisite to indictment for violations of the Federal Election Campaign Act").

Plaintiffs argue that *Operating Engineers* is no longer good law because Congress overturned it in the 1979 Amendments to the Act. In reviewing the history of the 1979 Amendments, however, the Court finds no evidence to support Plaintiffs' argument that Congress added the phrase "by an affirmative vote of 4 of its members" to the referral provision found at 2 U.S.C. 437g(a)(5)(c) "in response to the Ninth Circuit's decision" in *Operating Engineers*. In fact, the 4-vote requirement was contained in the bill reported by the House Committee on Administration on September 7, 1979, which was three weeks before the Ninth Circuit decided *Operating Engineers*. *See* H.R. 5010 96th Cong. (1st Sess. 1979), reprinted in Legislative History of Federal Election Campaign Act Amendments of 1979 ("1979 Legislative History"), at 412. Therefore, the 4-vote requirement could not have been written in response to the *Operating Engineers* decision. More significantly, the 4-

vote requirement added in 1979 states a limitation only on the Commission's authority, not the Attorney General's.

**F.     Miscellaneous**

Plaintiffs argue that the Commission's "exclusive" jurisdiction would be thwarted if the Attorney General could conduct a concurrent criminal investigation. Plaintiffs suggest that no respondent would cooperate with a Commission civil investigation while facing criminal charges for the same conduct, but would invariably invoke the Fifth Amendment. The civil and regulatory laws of the United States frequently overlap with the criminal laws, however, thereby creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous. In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence. *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980) (citation omitted). The Court finds that there is no substantial prejudice to a party in the event of parallel proceedings under the Act.

**G.     Conclusion**

For the reasons set forth in this Article IV, the Court concludes that, as a matter of law, the Act does not grant the Commission exclusive jurisdiction to enforce criminal provisions of the Act. The Court further concludes that the Act does not limit, in any way, the Attorney General's plenary power to enforce the criminal provisions of the Act (although the Act does grant the Commission exclusive jurisdiction to enforce the Act's civil provisions).

## V.  APA AND MANDAMUS CLAIMS

Plaintiffs' second and third causes of action allege that although the Commission has found

reason to believe that Plaintiffs have violated the Act, the Commission has failed to conduct an investigation as required by 2 U.S.C. § 437g(a)(2). Relying upon the Administrative Procedure Act, 5 U.S.C. §§701-706 (the "APA"), and the mandamus statute, 28 U.S.C. §1361(a), Plaintiffs ask the Court to order the Commission to proceed with an investigation of Plaintiffs' alleged activities.

Judicial review of an agency's action or failure to act under the APA is limited to "discrete" actions that are "legally required." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). The *Norton* Court explained that a "failure to act" (part of the APA's definition of what constitutes an "agency action"), 5 U.S.C. §551(13), "is simply the omission of an action without formally rejecting a request - for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Id.* The *Norton* Court also explained that the relief provided by section 706(1) of the APA and by mandamus are essentially the same.

> The APA continued forward the traditional practice prior to its passage, when judicial review was achieved through one of the so-called prerogative writs – principally writs of mandamus under the All Writs Act, now codified at 28 U.S.C. 1651(a). The mandamus remedy was normally limited to enforcement of a 'precise definite act . . . about which [an official] had no discretion whatever. . . . 706 (1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act or to take action upon a matter, without directing *how* it shall act.

*Id.* at 63. In other words, Plaintiffs have no cause of action under the APA or the mandamus statute unless they can demonstrate that the Commission "failed to take a discrete agency action that it is required to take." *Id.*

The Court finds that nothing in section 437g or any other provision of the Act imposes any deadline for the Commission to take particular investigatory actions. While the Act specifies that the Commission "shall make an investigation" after finding reason to believe that the Act has been

15

violated, 2 U.S.C. § 437g(a)(2), that is not a "precise, definite act . . . about which [the Commission] has no discretion whatever." *Norton*, 542 U.S. at 63 (internal quotations and citations omitted). The statute (1) does not prescribe any particular actions that the Commission is required to take in conducting an investigation, (2) does not state what, if any, information the Commission must seek, and (3) provides no time limit for completing any investigative action.

The Act grants the Commission power to conduct audits and field investigations, as well as take depositions, propound interrogatories and subpoena documents, *see* 2 U.S.C. § 437g(a)(2) and 2 U.S.C. § 437d(a)(3) & (4). Nothing in the language of the Act states that the Commission is required to use any of these investigative tools in any particular investigation, nor is there any specified sequence or time frame in which the Commission must employ them. Rather, the law is clear that an agency authorized to conduct investigations has broad authority to control the conduct and timing of its investigation. *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *FEC v. Rose*, 806 F.2d 1081, 1091 (D.C. Cir. 1984) (considering the Commission's discretion to set its own enforcement priorities and concluding "[I]t is not for the judiciary to ride roughshod over agency procedures or sit as a board of superintend[e]nce directing where limited agency resources will be devoted. We are not here to run the agencies."). *See also, Durkin for U.S. Senate Comm. v. FEC*, 2 Fed. Election Camp. Fin. Guide (CCH) ¶ 9147 at 51,113 (D. N.H. 1980) (finding mandamus relief not available).

Plaintiffs assert that this is not a case where Plaintiffs are asking the Court to tell the Commission how and in what manner it must conduct its investigation, but rather one where the Court should compel the Commission to conduct an investigation that is legally required by statute. Plaintiffs argue that the Commission *is not* conducting *any* investigation. The Court finds

16

Plaintiffs' argument disingenuous, however, as some of the documents Plaintiffs submitted in support of their Motion for Declaratory Judgment demonstrate that the Commission has, in fact, opened an investigation into Plaintiffs' activities, in accord with 2 U.S.C. § 437g(a)(2). For example, Exhibit B to Plaintiff's Brief in Support of the Motion for Declaratory Judgment is a letter from the Commission which explicitly refers (not once but twice) to the Commission's investigation of Plaintiffs. Exhibit B also informs Plaintiffs of the Commission's actions, and it invites Plaintiffs to submit any factual materials they believe pertinent in response to the Commission's findings.

In addition, the Court finds that the Act does not specify any "discrete action" the Commission is "required" to take in any particular time frame, such that it could be subject to review under the APA. *See Norton*, 542 U.S. at 63. Furthermore, a court cannot rely upon mandamus to exert control over an ongoing law enforcement investigation, for "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion" of the authorized government officials. *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970).

Finally, Congress generally has deprived federal courts of jurisdiction to review the Commission's handling of its administrative complaints. *Stockman v. FEC*, 138 F.3d 144, 153 (5th Cir. 1998); *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996). Congress created only two narrow exceptions permitting judicial action regarding an uncompleted Commission investigation. First, Congress provided that, upon petition by the Commission, the United States district courts have jurisdiction to compel compliance with Commission subpoenas. *See* 2 U.S.C. § 437d(b). Clearly, this has no relevance in the instant matter. Second, Congress provided that an administrative complainant may bring a civil action against the Commission in the United States District Court for the District of Columbia "[i]f the FEC dismissed [his or her] complaint or failed to act on it in 120

days." NCPAC, 470 U.S. at 488; 2 U.S.C. § 437g(a)(8).

As the Act specifically provides that "administrative complainants" are authorized to petition for judicial review of the Commission's alleged failure to act in an enforcement investigation, the Court must assume Congress intended to deny anyone other than an administrative complainant (including administrative <u>respondents</u>, such as Plaintiffs) the right to petition for judicial review. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded").

Notably, Congress also explicitly limited jurisdiction over such failure-to-act suits to the United States District Court for the District of Columbia. 2 U.S.C. § 437g(a)(8)(A). As such, this Court (in the Eastern District of Michigan) could not assert jurisdiction over Plaintiff's failure-to-act claims, even if Plaintiffs were administrative complainants. Moreover, even if the APA were construed to give a right to judicial review to targets of a law enforcement investigation under other statutory schemes, Congress's explicit restriction of such a right in the Act to administrative complainants to file suit only in the District of Columbia, plainly precludes such a cause of action here. See *Stockman*, 138 F.3d at 154.

Therefore, for the reasons set forth above, the Court concludes that Plaintiffs' claims against the Commission under the APA and the mandamus statute have no legal basis.

## VI. CONCLUSION

Accordingly, and for the reasons stated above, Plaintiffs' Motion for Declaratory Judgment is DENIED, the Attorney General's Motion to Dismiss is GRANTED, the Commission's Motion for Summary Judgment is GRANTED, Plaintiffs' Motion for Limited Discovery is DENIED as MOOT, and Plaintiffs' cause of action is DISMISSED WITH PREJUDICE. Judgment shall be entered accordingly.

IT IS SO ORDERED.


        s/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated: August 15, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 15, 2007.

        s/Marie E. Verlinde
        Case Manager
        (810) 984-3290